CLINE v. JAMES et al.

(Circuit Court, D. Oregon. May 12, 1900.)

No. 2,548.

CONTRACTS—PERSONS BOUND.

A part owner of mining claims, whose interest was not of record, but who assented to the bonding of the same by the record owner, has no standing in equity to repudiate a conveyance of his interest by his co-owner in accordance with the terms of the bond, on the ground of a private agreement between them that such conveyance would not be made unless the purchaser also took certain other claims bonded separately; nor is it material that the purchaser had knowledge of complainant's interest, the latter being bound by the terms of the bond to which he assented.

In Equity. Suit to recover an interest in mining claims.

L. B. Cox, C. J. Schnabel, and Smith & Hough, for plaintiff.

W. E. F. Deal, John M. Gearin, and Coshow & Sheridan, for defendants.

BELLINGER, District Judge. The plaintiff claims to be the owner of an undivided three-eighths interest in the Gold Bug mining claim, and of an undivided one-half interest in the Oversight Lode mining claim, in the Wolf Creek district, in this state, and he brings this suit to compel a conveyance of such interests by the defendant James. James acquired the property from the defendant R. A. Jones. The plaintiff and the defendant R. A. Jones were jointly interested in several mining properties in the district referred to, and it is claimed by the plaintiff, but denied by the defendants, that the two mining claims in question were a part of their joint property. Among the property held in common were some mines known as the "Albany Group." In 1897 this group of mines was bonded to James by the parties, and at the same time Jones bonded, by a separate writing, the Oversight and Gold Bug to James for $7,000. These bonds were afterwards extended to September 19, 1898. Before the expiration of the bonds, Jones sold the Gold Bug and Oversight mines to James; the former for $6,999, and the latter for $1. The plaintiff, claiming, as stated, to be a joint owner with Jones in these properties, testifies that these bonds were given with his knowledge and approval, but that it was understood between Jones and himself that Jones would not let one group go without the other, the relation of the mines to each other being such that the Albany group would be greatly depreciated in value by the sale of the other group; and this alleged understanding between Jones and the plaintiff is relied on to invalidate the title taken by James under his bond on the Oversight and Gold Bug mines. It was clear to me when the cause was submitted that the plaintiff had no standing in equity, and I so stated, but in deference to the wishes of his counsel I withheld a formal decision in the cause, and gave them leave to file written arguments, which they have done. Nothing is presented to change the opinion formed at the hearing. It is claimed, among other things, that the sale made was not in compliance with the bond; the bond on the two mines being for $7,000, and the sale as made being $6,999 for one mine and $1 for the other. The

101 F.—47

sale was during the life of the bond, and satisfies it, and there is nothing more to be said as to that. I regard it as very questionable whether the plaintiff had any interest in the two mines in question. Assuming that he had an interest, and that James knew of it, his acquiescence in the bond under which the sale was made is conclusive upon him. The bond made with his authority was his bond, and it does not admit of argument that the obligors in an instrument cannot vary the terms of their obligation by a private understanding between themselves, nor is the case any wise different where one acts for both with the knowledge and acquiescence of his co-owner. The bond is the thing, and where that is as the parties intended it no understanding aliunde can avail to defeat or change it. It is said that the plaintiff assented to the bond upon a condition, and that the obligee in the bond, taking notice of the plaintiff's assent, must take notice of the condition upon which the assent was given; but this is merely another way of saying that the owners of property may enter into an obligatory writing of sale with an antecedent understanding between themselves not to abide by their obligation, and that the obligee, so far from taking anything under the writing, is bound by the agreement of the parties to violate it. Much has been said to the effect that James was not a bona fide purchaser, etc., and that there is no estoppel upon the plaintiff, and that, in any event, these defenses must be pleaded. There is no question of estoppel nor of bona fide purchase in the case. Those are cases where innocent persons have been misled by appearances into dealing with or acquiring rights or interests in property under circumstances that would make it unconscionable to permit the owner to assert his title. This is a case, as already stated, where the alleged owners covenant to sell upon certain conditions, with an alleged understanding between themselves not to be bound by such conditions. Moreover, I am convinced that there was no such agreement or understanding between the parties to this bond not to sell one group of mines without both, as is claimed. Cline, the plaintiff, testifies that when the defendant Jones sent the bond "down here" for him to sign (this was the bond for the sale of the Albany group, in which the plaintiff's interest was of record), he, the plaintiff, "noticed the Oversight was not in it," and that he wrote to Jones regarding it; that Jones answered, "I put the Oversight along with the Gold Bug for $7,000, and I won't let them take one group without taking the two, to make a lump sale of it;" that this understanding was contained in the correspondence of the parties, as is, of course, implied under the circumstances. A large number of letters written by Jones to Cline are in evidence. These letters cover a period of time from the 1st of January, 1896, to October 26, 1898. The frequency of this correspondence is shown by the fact that a large number of letters were sent by Jones to the plaintiff almost every month during this period. To illustrate, the defendant Jones wrote during the month of June, 1897, to the plaintiff, on the 3d, 5th, 6th, 9th, 16th, 22d, and 29th of the month. During the other months these letters were less frequent, but still they were quite as numerous, considering the nature of the business to which they relate, as could have been expected from the most painstaking business associate to his partner. It is a suggestive

fact that in all this volume of correspondence the particular letter or letters in which the plaintiff avers that Jones told him he would not let the purchaser take one group without taking the two are not to be found. In these letters the same subjects are referred to over and over again, with reference to all these properties. The different mining properties—those which are admitted to have been the joint property of the parties as well as those which are claimed by Jones to have been his separate property—are constantly mentioned. It is incredible that this volume of letters, filled with details of the business in which these parties were concerned, should nowhere make mention of such an agreement as the plaintiff now bases his right upon. It is likely that there would have been more than one letter containing some reference to such an agreement if it had existed. There is nowhere any discernible break in the correspondence, no place that indicates a missing letter; nor is any explanation offered of the fact that in all this book of letters the only one bearing upon the point in issue should be missing. The plaintiff has evidently preserved this correspondence with great care. Towards the latter part of the correspondence there are indications of impending disagreement between the parties, and the correspondence shows that Jones regarded the Gold Bug mine as his individual property. This occurred long before the expiration of the bond and the sale to James. Under these circumstances, it is hardly possible that the plaintiff, who has preserved so many of these letters, would have neglected such correspondence as contained the agreement which he now testifies to, especially in view of the fact that such an agreement would have been conclusive of his title to an interest in the Gold Bug mine. As I have already stated, I think it doubtful whether the plaintiff had any interest in this particular property; but, if he had, I am of the opinion that he was content to have the property sold in accordance with the terms of the bond, of which he had knowledge, and to which he assented, and that the claim now made of a contrary understanding is a pretense due to the fact that Jones has refused to account to him for any part of the proceeds of the sale made to James, and that the plaintiff, because of the fact that he sees no chance to recover what he claims as his share of the proceeds of that sale from Jones, seeks by this suit to reinstate himself in his alleged title to the property which has been sold, and the proceeds of which have passed beyond his reach.